UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUBRA FERGUSON, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>SUPERINTENDENT, )<br>)<br>Respondent. ) | CAUSE NO. 3:12-CV-272 JM |

### OPINION and ORDER

Aubra Ferguson, a *pro se* prisoner, is serving a 73-year sentence for multiple counts of kidnapping and related offenses committed in Warrick County. *State v. Ferguson*, 87D01-0301-FA-12. He filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE # 1.) The court is obligated to review the petition and dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . ." RULE 4 OF THE RULES GOVERNING SECTION 2254 CASES.

In deciding the petition, the court must presume the facts set forth by the state court are correct, and it is Ferguson's burden to rebut this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On post-conviction review, the Indiana Court of Appeals set forth the facts underlying Ferguson's offenses as follows:

> [O]n January 10, 2001, Warrick County Sheriff's Deputy Marvin Bruce stopped Ferguson after he learned that Ferguson failed to return a vehicle that he had been test-driving to an automobile dealership. Deputy Bruce followed Ferguson to the dealership and into the office. Deputy Bruce then contacted a police dispatcher and was informed that there were outstanding arrest warrants for Ferguson in both Vanderburgh and Posey Count[ies].

When Ferguson was questioned about the warrants, he drew a pistol and pointed it at Deputy Bruce. Deputy Bruce then took cover in a hallway and attempted to fire a shot at Ferguson. However, as Ferguson began to run, Deputy Bruce's handgun jammed. As a result, Ferguson was able to escape through a back window of the dealership.

Nearly twenty-five officers arrived at the scene and joined in the chase. Canine units, a SWAT team, and a helicopter were also summoned. Ferguson eventually entered the residence of Sherry Schafer and pointed his gun at her in the presence of her six-year-old and four-year-old grandchildren. However, Ferguson left the premises when Schafer refused to assist him. Deputy Bruce then spotted Ferguson in a field, whereupon Ferguson again pointed his pistol at him. Ferguson ignored all orders to stop and drop his weapon, and a police . . . dog then mistakenly jumped on Deputy Bruce as he attempted to fire a shotgun at Ferguson. At that point, Ferguson was able to escape around the corner of a building.

Ferguson then entered a beauty salon, still armed with his handgun. At the time, the owner of the business, Barb Jamerson, two employees, Katie Ott and Danna Boyles, and two customers, Jason Graulich and Marilyn Stephens, were inside. Ferguson took all five of them hostage and grabbed Ott, who was six months pregnant, by her arm and directed her to another room in the building. Stephens was over sixty-five years old and was on oxygen, but Ferguson left the tank behind when he ordered her to the back room. A hostage negotiator was called to the scene, and eventually Ferguson released all five individuals—one by one—following a five-hour standoff.

Ferguson had been using methamphetamine at the time these events occurred.

Ferguson was charged with eleven felonies and one enhancement. At Ferguson's initial hearing, the trial court appointed counsel to represent him and advised Ferguson as follows:

> Now I have explained to you the maximum and minimum penalties. Because most of these are alleged to have occurred on the same date, most likely the law would require only that they would run concurrent with one another. So, the maximum period of total confinement you would be facing is fifty years in prison and the least is paying the costs of the action. If there was some reason that the law provided that they would run at separate time, they run consecutive to one another and you

> multiplied all of the Class As together and gave the maximum sentence for them, . . . you have six Class A felonies and that would be three hundred years and you have a Class B Felony, which is Count number nine and that is ten years in prison with aggravating circumstances increasing it to twenty . . . mitigating reducing it to six. That is on Count number nine. Okay. So, you are looking at . . . a possible . . . three hundred and thirty-two years as maximum . . . by adding them all together.

The charging information was amended twice and each time the trial court advised Ferguson about the range of penalties he could receive.

Ferguson's trial counsel, Charles Martin, began negotiating a plea bargain. Martin advised Ferguson that if he were convicted at trial, he could face a seventy- or eighty-year sentence, and that it could possibly be more than a one-hundred-year sentence. Martin told Ferguson that the trial court could order the sentences to be served consecutively instead of concurrently. Ferguson agreed to plead guilty to each count in exchange for the State's dismissal of a use of a firearm and habitual offender charges. The plea agreement also called for a fifty-year cap on sentencing with at least thirty years to be served in the Department of Correction.

At the August 1, 2002, guilty plea hearing, the trial court found that Ferguson understood the nature of the charges against him and the possible sentence, that a factual basis existed for the plea agreement, that the plea was made freely and voluntarily, and took the plea under advisement. A sentencing hearing was scheduled for October 10, 2002.

On September 10, 2002, Ferguson, who was still represented by Martin, filed a pro se motion to withdraw his guilty plea. In that motion, Ferguson claimed that he did not knowingly or intentionally kidnap or attempt to kidnap anyone, and that his plea was entered into under duress and coercion by his attorney. Ferguson further claimed that he was not satisfied with Martin's representation and that Martin had a conflict of interest because he was the county attorney as well.

At a hearing held on October 3, 2002, Martin withdrew his representation of Ferguson and stated that he believed it was in Ferguson's best interest to enter into the plea agreement he had negotiated. Ferguson maintained his position that he wished to withdraw his plea. The trial court granted Ferguson's motion and appointed Mark McConnell to represent him.

3

> McConnell negotiated a second plea agreement whereby Ferguson would plead guilty to five counts of class A felony kidnapping and one count of class D felony resisting law enforcement in exchange for the dismissal of the other counts. Sentencing was left to the trial court's discretion. On April 25, 2003, the trial court accepted the plea agreement and imposed an aggregate sentence of seventy-three years.

*Ferguson v. State*, No. 87A05-1008-PC-565, slip op. at *1-2 (Ind. Ct. App. Apr. 27, 2011) (internal citations omitted). Ferguson took a direct appeal, and the Indiana Court of Appeals affirmed on March 19, 2004. *Ferguson v. State*, No. 87A01-0308-CR-305 (Ind. Ct. App. Mar. 19, 2004). He did not seek review in the Indiana Supreme Court or the U.S. Supreme Court. (DE # 1 at 1.)

On October 20, 2004, Ferguson filed a petition for post-conviction relief alleging ineffective assistance of counsel in connection with his guilty plea. *Ferguson v. State*, No. 87A05-1008-PC-565, slip op. at *3. Specifically, he claimed that Martin misinformed him about the maximum sentencing exposure he faced. *Id.* He claimed that if he had been properly informed, he would not have withdrawn his first plea agreement. *Id.* at *4. Following an evidentiary hearing at which Martin testified, the trial court denied the petition. *Id.* at *3-4. The Indiana Court of Appeals affirmed. *Id.* at *5. The Indiana Supreme Court denied Ferguson's petition to transfer on June 29, 2011. *Ferguson v. State*, 950 N.E.2d 1213 (Table) (Ind. Jun. 29, 2011.) He did not seek review in the U.S. Supreme Court. (DE # 1 at 2.)

On May 23, 2012, Ferguson tendered his federal habeas petition to prison officials for mailing. (*Id.* at 4.) In it he raises the same claim of ineffective assistance of counsel he raised on post-conviction review. (*See id.* at 3.)

4

Ferguson's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, habeas corpus petitions are subject to a strict one-year statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Ferguson's claim does not implicate newly discovered evidence or a newly recognized constitutional right, nor does he claim that a state-created impediment prevented him from filing his federal petition on time. Under 28 U.S.C. § 2244(d)(1)(A), his conviction became final when the time for seeking review in the Indiana Supreme

Court expired on April 19, 2004. *See* IND. APP. R. 57(C) (petition to transfer must be filed within 30 days of appellate court judgment); *Gonzalez v. Thayer*, 132 S. Ct. 641, 653-54 (U.S. Jan. 10, 2012) (when a state prisoner does not seek direct review in the state supreme court, his conviction becomes final for purposes of 28 U.S.C. § 2244(d)(1)(A) when the time for seeking such review expires). Ferguson had one year from that date to seek federal habeas relief, absent any period of tolling.

Ferguson filed his post-conviction petition in state court on October 20, 2004; by this time 184 days had elapsed on the federal clock. The filing of the petition tolled the deadline under 28 U.S.C. § 2244(d)(2), and the deadline remained tolled until the post-conviction proceedings came to a conclusion on June 29, 2011. At that time, Ferguson had 181 days remaining to seek federal habeas relief. He filed the present petition on May 23, 2012, which was 329 days after the Indiana Supreme Court's decision. Therefore, his petition was untimely by several months.

In response to Question 16, where the petitioner is asked to explain why his petition is timely under the provisions of 28 U.S.C. § 2244(d), Ferguson states as follows:

> S[i]nce petitioner's conviction and direct appeal and timely filed post conviction petition; appeal from denial of Petitioner's Appeal from Denial of post conviction relief, and the resulting denial of petitioners petition to transfer on June 29, 2011; and the filing of this Petition, less than one year has tolled from the one year allowed by 28 U.S.C. § 2244(d) (Just over 11 months) so petitioner is filing timely.

(DE 1 at 5.) It appears from the above that Ferguson believes his petition is timely because he filed it within one year of the Indiana Supreme Court's decision on post-conviction review. However, Ferguson did not account for the 184 days that elapsed on

6

the federal clock before he sought post-conviction relief in state court. Contrary to Ferguson's suggestion, the state court's decision on post-conviction review did not "restart" the one-year clock, nor did it "open a new window for federal collateral review." *DeJesus v. Acevedo*, 567 F.3d 941, 942-43 (7th Cir. 2009). Because Ferguson did not file his federal petition within one year of the date his conviction became final, it is untimely. *See* 28 U.S.C. § 2244(d)(1)(A). He has not otherwise provided grounds for excusing the untimeliness of his petition, which precludes the court from reaching the merits of his claim.

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). When the court has dismissed the petitioner's claim on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for the denial of a constitutional right. *Id.* Each is a

threshold inquiry, and the court need only address one component if that will resolve the issue. *Id.* at 485.

As is fully explained above, Ferguson's petition was late by several months. He has not provided grounds for excusing the untimeliness of his petition. Nothing before the court suggests that jurists of reason could debate the correctness of this procedural ruling or find a reason to encourage Ferguson to proceed further. Accordingly, the court declines to issue Ferguson a certificate of appealability.

For these reasons, the court **DISMISSES** the petition (DE # 1) as untimely pursuant to RULE 4 OF THE RULES GOVERNING SECTION 2254 CASES, and **DENIES** the petitioner a certificate of appealability.

                              **SO ORDERED.**

Date: July 13, 2012

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT